**Theodore E. MOBERG and Pauline Moberg, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 17641.**

United States Court of Appeals Ninth Circuit.

Nov. 8, 1962.

Ash, Bauersfeld & Burton and Robert Ash, Washington, D. C., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Arthur E. Strout and Edward S. Smith, Attys., I. R. S., Washington, D. C., for respondent.

Before ORR, HAMLEY and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Theodore and Vern Moberg were co-owners of a master franchise for the states of Washington and Oregon for the use of a patented freezing machine known as the "Dairy Queen" freezer. They have under varying types of contracts granted subfranchises for certain portions of their territory. The question here presented is whether the sums received by them under these subfranchises are taxable as capital gain from sales of property or as ordinary income from licenses. The Tax Court has ruled that these subfranchises constituted licenses and that the sums received constituted ordinary income. Moberg v. Commissioner of Internal Revenue, 1961, 35 T.C. 773.

Taxpayer Theodore Moberg and his wife have petitioned this court for review of the Tax Court decision. The case of taxpayer's partner, Vern Moberg, has gone on review to the Court of Appeals for the Fifth Circuit, which has reversed the Tax Court. Moberg v. Commissioner of Internal Revenue, 1962, 305 F.2d 800.

Two other circuits have had occasion to consider the nature of grants of Dairy Queen subfranchises. In all cases, as in the one before us, the payments in question consisted of lump sum payments plus continuing royalty payments based upon the gallons of mix used to produce the frozen product. The question presented in each case was whether under the terms of the subfranchises the reservations and restrictions imposed by the grantors were such as to constitute the grant a transfer of something less than "all substantial rights" of the grantor to the subject matter of the grant.

In 1956 the tenth circuit held the grants before it to be sales and the payments made therefor to be taxable as

capital gain. Dairy Queen of Oklahoma v. Commissioner of Internal Revenue, 10 Cir., 1957, 250 F.2d 503.

In 1959 this court, in Schmitt v. Commissioner of Internal Revenue, 271 F.2d 301, in dealing with a patented system of accounting, considered Dairy Queen of Oklahoma and declined to follow it indicating its preference for the dissenting opinion.

This year the fourth circuit, in Estate of Gowdey v. Commissioner of Internal Revenue, 307 F.2d 816, has held the lump sum payments for a Dairy Queen subfranchise to be taxable as capital gain. In a subsequent opinion, 307 F.2d 816, the court made it clear that this holding did not extend to the gallonage royalty payments which were held to be ordinary income.

In the case before us the Tax Court refused to follow Dairy Queen of Oklahoma, choosing instead to rely on this court's decision in Schmitt. Upon review of the companion case in the fifth circuit, the Court of Appeals, in reversing the Tax Court, chose to follow Dairy Queen of Oklahoma rather than Schmitt.

The fifth circuit opinion fully sets forth the factual background of these cases and it deals at length with the reservations and restrictions imposed by the grantors in the various types of contracts involved. Accordingly, we see no need to repeat this factual background in this opinion.

It is to be noted, as set forth in the fifth circuit opinion, that in the case before us four types of contracts were involved.

(1) The first subfranchise granted by the Mobergs, the form of which was followed in ten subsequent agreements. The Tax Court has called this form of contract the "ten-paragraph agreement." The fifth circuit opinion refers to it simply as the "eleven agreements."

(2) The type referred to by the Tax Court as the thirty-four-cent contract.

(3) The type referred to by the Tax Court as the fourteen-cent agreement.

(4) The contract with Thompson's Freeze, Inc.

As to all forms of contract, the fifth circuit opinion states, 305 F.2d at page 806:

"We have carefully considered the restrictions in the subfranchises granted. The various restrictive categories were designed to maintain quality, sanitary dispensing conditions, uniform standards for the trade named product, protect each subfranchise purchaser as against other purchasers in respect to territory, protect the seller in respect to the contract with the McCulloughs [from whom the master franchise had been obtained], and to insure the ascertainment and collection of contractual sums due by way of fixed prices and royalties. These restrictions were consistent with a sale of the franchise to use the machine and trademark in an exclusive territory."

We adhere to the position taken by us in Schmitt.

Nevertheless, we agree with the Court of Appeals for the Fifth Circuit that as to the ten-paragraph agreement the restrictions are consistent with a sale of the franchise. The controls retained by the grantors in substance serve primarily to assure that the agreed consideration in the form of the fixed price and subsequent royalty payments would be paid on time and in the proper amounts.[1]

---

1. The bulk of the restrictions consisted of the periodic duty to inform grantors of sales figures and freezer locations. Certain requirements of sanitation and repair were expressly imposed, but they would appear to deprive grantees only of the right to decide not to maintain their sales premises in clean, attractive condition. The loss of this right can hardly be said to detract significantly from grantees' prerogatives of ownership in light of the control of the conduct of their businesses transferred to them by the other provisions of the contracts. Furthermore, these policing standards were enforceable only by the grantors' power to terminate the entire transaction and did not subject grantees to the possibility of piecemeal future intervention by and at the will of the grantors. Pro-

784

As to the other types of contracts, we must, in adhering to Schmitt, respectfully disagree with the Court of Appeals for the Fifth Circuit.

It is to be noted as to those contracts that the combination of restrictions to a far greater degree presents a case of limitation upon the rights granted to the grantees rather than of assurance that the grantor will receive that which he has agreed to accept in exchange.

But further, it is to be noted that in various respects (relating, as examples, to the quality of mix and other supplies used, the right to sell other products than Dairy Queen, bookkeeping methods, the nature of the store premises and the manner in which the premises were to be maintained) the restrictions upon the purchasers were not fixed by contract, but remained to be determined from time to time by the grantors under a continuing power to make policy determinations in these respects. Even assuming that restrictions in such respects might be consistent with the outright sale when expressly imposed (which the commissioner disputes and which we need not decide) they were not so imposed here. Here the grantors have reserved to themselves the right in these respects to decide from time to time what is best for the business and most likely to increase sales and thus affect the extent of the amounts becoming payable to them. It is not, then, a case simply of agreed restrictions upon the manner in which the grantees may operate. It is a case of reservation by the grantors of a power to exercise continuing, active, operational control in areas which may well affect the success of the grantees' business and the extent of their financial obligations to the grantors under the subfranchise.

Under these circumstances, as to those forms of contract, we conclude as in Schmitt (271 F.2d at pages 307–308) that the Tax Court clearly had before it

visions for total forfeiture for nonperformance of conditions are not per se inconsistent with the passage of ownership, Treas.Reg. § 1.1235–2(b) (2) (ii), and have been held not to defeat the sale

"evidence of the retention of rights in the [Dairy Queen process] * * * and of limitations imposed on the transferees, sufficient to establish that *less* than 'all substantial rights' had been transferred."

As to the ten-paragraph agreement the Tax Court is reversed. As to all other agreements the Tax Court is affirmed. This case is remanded to the Tax Court for further proceedings in the light of our judgment respecting the ten-paragraph agreement.

of patents for capital gains purposes. See Lawrence v. United States, 5 Cir., 1957, 242 F.2d 542; Allen v. Werner, 5 Cir., 1951, 190 F.2d 840.